Daniel G. Blythe
Asst. Federal Public Defender
214 W. Lincolnway Ste. 31A
Cheyenne, WY 82001
Phone: 307-772-2781
Fax: 307-772-2788
For Defendant Ludwig

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08–CR-224-D |
| | ) | |
| **SERGEI PAUL LUDWIG**, | ) | |
| | ) | |
| Defendant. | ) | |

## *MOTION FOR AN ORDER SUPPRESSING EVIDENCE*

COMES NOW the Defendant by and through his attorney, Assistant Federal Public Defender Daniel G. Blythe and respectfully moves the Court for an Order Suppressing Evidence seized as a result of a traffic stop. As grounds for this motion the defendant advises the Court that:

1. On August 26, 2008 the Defendant was driving east bound on Interstate 80 in Wyoming. Trooper Chatfield of the Wyoming Highway Patrol stopped the defendant for a speeding violation.

2. Chatfield noticed that the defendant was nervous and that his hands were visibly trembling. Chatfield began interrogating Mr. Ludwig about his travels plans and travel history. The driver did not make eye contact. Of significance the trooper saw a shirt hanging on the hanger in the back seat. When the trooper looked into the car he saw snacks and a cooler in the back seat. The defendant gave the trooper proper documents including a driver's license, registration and insurance. The trooper began interrogating Mr. Ludwig about the financing of the car and Mr. Ludwig's credit after seeing that the registration was in the name of Mr. Ludwig's friend and employer. The trooper continued interrogating Mr. Ludwig about his employment, and work in California. The trooper returned the documents to Mr. Ludwig and told him he was free to go. As Mr. Ludwig returned to his car Chatfield asked if he could ask additional questions. Mr. Ludwig indicated that he would rather travel without further delay. Based on these suspicions Chatfield detained Mr. Ludwig for a dog search.

The dog alerted on the outside of the car. Chatfield then put the dog in the car but the dog did not alert. Chatfield then put the dog in the trunk but the dog did not alert. Chatfield then began search Ludwig's belongings and the car but found nothing except for some twenty dollar bills. Chatfield noticed that the carpet was glued down and that the sending unit on the gas tank had tool marks. Chatfield then took his tools out of his patrol car and began dismantling the seats in the car. Chatfield then found a compartment. Chatfield called for a two truck and took the car to a shop where the seats (not the gas tank or sending unit) were dismantled and 11 pounds of suspected heroin were found.

3. The defendant alleges that the detention of the Defendant was unlawful and not based upon reasonable suspicion. The defendant also alleges that the search or dog sniff was improper as the dog was not trained to detect the substance found.

4. The Fourth Amendment to the United States Constitution protects, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures". United States Constitution, Amendment IV; *see also Mapp v. Ohio*, 367 U.S. 643, 655-56 (1961)(incorporating the Fourth Amendment's provisions to the states through the Fourteenth Amendment). A seizure is "*per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983); *Terry v. Ohio*, 392 U.S. 1, 20 (1968). A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979).

A routine traffic stop is more analogous to an investigative detention, than a custodial arrest, however, and should be analyzed according to the principles set out in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001). To determine the reasonableness of an investigative detention, the Court is expected to make a dual inquiry asking (1) "whether the officer's action was justified from its inception," and (2) "whether it was reasonably related in scope to circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. An investigative stop under *Terry* is, therefore, temporary, and should last no longer than necessary to effectuate the purpose of the stop, and the scope of the detention

should be tailored to its underlying justification. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

An initial traffic stop is valid under the Fourth Amendment if (a) it is based upon an observed traffic violation; or, (b) the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). When stopped for a traffic violation, a motorist expects to spend a short period of time responding to an officer's questions and waiting for confirmation of his license and registration. *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). During a traffic stop, an officer may ask questions related to the purpose of the stop, which ordinarily includes travel plans. *United States v. Holt,* 264 F.3d 1215, 1221 (10th Cir. 2001). The Government's general interest in criminal investigation is generally insufficient to outweigh an individual's interest in ending the detention. *Holt*, 264 F.3d at 1221.

Once a motorist has "produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for questioning." *Holt*, 264 F.3d at 1221, *citing United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988). Further delay is only justified if the officer has articulable reasonable suspicion of illegal activity or the encounter has become consensual. *Holt,* 264 F.3d at 1221. The Fourth Amendment reasonableness of a traffic stop based on probable cause must be judged by examining the length of the detention and the manner it was carried out. *Holt*, 264 F.3d at 1230. A traffic stop may not be extended beyond the time reasonably required to effectuate its purpose. *Muehler v. Mena*, 544 U.S. 93, 101 (2005); *Alcarez-Arellano*, 441 F.3d at 1258.

A detention can be modified or extended by a knowing and intelligent consent to lengthen or expand the encounter, but the consenting citizen controls the nature of the consent and the degree to which any conduct may be based upon the consent. *United States v. Elliott*, 107 F.3d 810, 813 (10th Cir. 1997).

Continued detention, absent consent, is appropriate only if the investigating officer develops a reasonable suspicion of criminal activity during the course of the initial traffic stop. *United States v. Williams*, 271 F.3d 1262, 1267 (10th Cir. 2001); *Rosborough*, 366 F.3d at 1148, *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000). Even reasonable suspicion may not be based upon an "inchoate or unparticularized suspicion or hunch, but must be grounded on facts which , in light of the officer's experience, support specific reasonable inferences that justify the intrusion." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883(1968). Refusal to provide consent to search cannot be used as a basis for a finding of suspicion. *United States v. Santos*, 403 F.3d 1120, 1125-26 (10th Cir. 2005); and *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

Detention of an individual for the purpose of questioning in matters unrelated to the traffic infraction amounts to an undue delay in completion of the original interference upon that individual's liberty and amounts to an unreasonable seizure in violation of the Fourth Amendment. *United States v. Walker*, 933 F.2d 812, 816 (10th Cir. 1991). It has been clearly recognized that a seizure that is lawful at its inception can develop into a violation of the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the

Constitution. *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 837 (2005). A lawful *Terry* type stop for a driving citation becomes *unlawful* if it is prolonged beyond the time reasonably required to complete the mission. *Caballes*, 125 S.Ct. at 837. The Fourth Amendment prohibits extension of a traffic detention for narcotics or other general criminal investigations no matter how cursory the delay to facilitate use of a narcotics detection canine. *Caballes*, 125 S.Ct. at 837, and *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000).

To assess whether or not reasonable suspicion existed, this Court will look to the totality of the circumstances to determine if the officer had a particularized, objective basis for suspecting wrong doing *United States v. Bradford*, 423 F.3d 1149, 1157 (10th Cir. 2005), *United States v. Sokolow*, 490 U.S. 1(1989). Even when each factor, considered individually, has an innocent explanation, reasonable suspicion may exist when the factors are considered as a whole. The trial court must evaluate the officer's conduct in light of "common sense and ordinary experience." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). But some seemingly innocuous factors can describe such a large number of travelers, that practically random searches would be permitted if the courts deemed them sufficient to form the basis for reasonable suspicion." *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) and see United States v. Santos, 403 F.3d 1120, (10th Cir 2005).

If a person is detained after the purpose of the traffic stop is completed and the officer lacks consent or reasonable suspicion, then the fruits of that detention are inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

5. Nervousness is not a significant factor. In United States v. Bradford, 423 F.2d. 1149, 1157 (10th Cir. 2005) the court said:

> Moreover, we have repeatedly emphasized that nervousness and its signs should not be overcounted in our analysis. *Compare United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000)* [**17] (holding nervousness is "of limited significance" in determining whether reasonable suspicion exists) *with United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000)* (noting extreme and continued nervousness "is entitled to somewhat more weight") *and Williams, 271 F.3d at 1269* (concluding that when nervousness exceeds that of the average citizen during a traffic stop, there is "no reason . . . to ignore [a defendant's] nervousness in reviewing the totality of the circumstances.").

In the case of United States v. Santos, 403 F.3d. 1120 (10th Cir. 2005) the court said:

> When a motorist detained for a routine traffic violation, such as speeding, shows unusual signs of nervousness, this may be considered as part of the totality of circumstances a reasonable law enforcement officer would analyze in investigating possible crimes. *United States v. Johnson,* 364 F.3d 1185, 1192 (10th Cir.2004). But nervousness is a sufficiently common-- indeed

natural--reaction to confrontation with the police that unless it is unusually severe or persistent, or accompanied by other, more probative, grounds for reasonable suspicion, it is " 'of limited significance' in determining whether reasonable suspicion exists." *Williams,* 271 F.3d at 1268 (quoting *United States v. Wald,* 216 F.3d 1222, 1227 (10th Cir.2000)); *see Delaware v. Prouse,* 440 U.S. 648, 657, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (noting that traffic stops "may create substantial anxiety"). Only extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion. *Williams, supra; see also West,* 219 F.3d at 1179; *United States v. Salzano,* 158 F.3d 1107, 1113 (10th Cir.1998).

6. The detention which resulted in a false alert by the police dog being unlawful and the false alert by the dog requires suppression of the fruits of the search.

WHEREFORE, defendant requests that a hearing and that the court issue an order suppressing the evidence seized from the defendants automobile.

DATED this 24th day of October, 2008.

                Respectfully submitted,

                RAYMOND P. MOORE
                Federal Public Defender

                */s/ Daniel G. Blythe*
                Daniel G. Blythe
                Asst. Federal Public Defender
                214 W. Lincolnway Ste. 31A
                Cheyenne, WY 82001
                307-772-2781
                Fax: 307-772-2788

## *CERTIFICATE OF SERVICE*

I hereby certify that the foregoing was served on the 24th day of October, 2008, upon the following by:

☐ e-mail
☐ hand delivery to USAO court box
☐ fax
☐ mail, postage paid
☒ electronic filing

                */s/ Daniel G. Blythe*