Thomas A. Fleener
119 Grand Ave
PO Box 913
Laramie WY 82073
307-460-4333
fax: 866-572-8015

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

**APR** 09 **2009**

Stephan Harris, Clerk
Cheyenne

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CR-08-00224-WFD |
| | ) |
| SERGEI PAUL LUDWIG, | ) |
| | ) |
| Defendant. | ) |

## ATTACHMENTS TO DOCUMENT #51 – DEFENDANT'S MOTION TO SUPPRESS

**COMES NOW**, the Defendant, Sergei Paul Ludwig, by and through his attorney,

Thomas Fleener, and hereby submits the following attachments to Document #51 – Defendant's

Motion to Suppress:

A. Affidavit of professional dog trainer Mr. Steven Nicely – 4 pgs.

B. Photo taken of Defendant's car showing air freshener.

C. Photo taken of Defendant's car showing air freshener.

D. Still images taken from Trooper Chatfield's video showing that Defendant did not

have a shirt hanging in the rear of the vehicle – 6 pgs.

E. Photo taken of Defendant's car showing clutter and other items.

F. Photo taken of Defendant's car showing clutter and other items.

G. Copy of traffic ticket .

H. Photo of radar screen purportedly taken several hours after the stop.

I. Trooper Chatfield's report written 3 days after stop – 4 pgs.

J. DEA report outlining that Defendant stated the car belonged to his friend, Robert

Disiena – 5 pgs.

K. DEA report outlining interview of Robert Disiena verifying Defendant's earlier stated

version of the facts regarding ownership of the vehicle.

WHEREFORE, the Defense respectfully submits the attachments.

Dated this 9th day of April, 2009.

Respectfully submitted,

*/s/ Tom Fleener*
Thomas A. Fleener
The Law Office of Thomas A. Fleener, P.C.
119 Grand Avenue
PO Box 913
Laramie WY 82073
307-460-4333

## *CERTIFICATE OF SERVICE*

I hereby certify that the foregoing was served on the 9th day of April, 2009, by district court electronic submission to all parties.

/s/ *Tom Fleener*
Thomas A. Fleener

# EXHIBIT "A"

Thomas A. Fleener
119 Grand Ave
PO Box 913
Laramie WY 82073
307-460-4333
fax: 866-572-8015

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CR-00224-WFD |
| | ) | |
| SERGEI PAUL LUDWIG, | ) | |
| | ) | |
| Defendant. | ) | |

## **AFFIDAVIT OF STEVEN D. NICELY**

**COMES NOW** the Affiant, Steven D. Nicely, and swears as follows:

I am a professional dog trainer and have been involved in the handling, training, and supervision of approximately 1,000 police service dogs over the course of more than thirty years. I have supervised the training of police service dogs for law enforcement agencies around the world. In 2005 and 2006 I trained U.S. State Department explosive detection dogs at the American Embassy in Baghdad, Iraq. I belong to two behavioral science associations and one international working dog association, and have been published in professional journals such as

1

The Texas Prosecutor, The Voice for the Defense, and Eagle's Eye (from the National Defender Investigator Association). I have testified as an expert for prosecuting attorneys and defense lawyers alike in thirty-nine cases.

I have reviewed Trooper Chatfield's arrest report, the government's training and field records for the canine team in question, the video evidence of the sniff search in this case, and the transcript of testimony provided at the December 3, 2008 suppression hearing. I hereby make the following findings.

1. The probability of the dog's response in this case being induced by the odor of a substance the dog was trained to detect is very low, but by the dog responding as a result of the actions of the handler is very high.

2. The probability of narcotics being present when Todd responds to an automobile's exterior in real-world conditions is only 56%.

| Overall Sniff Searches | Sniff Search | Response | Actual Find | Claimed Residue | Currency | Claimed Paraphernalia | Claimed Confessed Use | Total Claimed Finds |
|---|---|---|---|---|---|---|---|---|
| | 94 | 56 | 31(55.37%) | 5 | 2 | 5 | 2 | 44(78 57%) |
| Vehicle Sniffs Exterior to Establish PC | 82 | 50 | 28 (56%) | 4 | 2 | 4 | 2 | 39 (78) |
| Vehicle Sniffs Exterior to Establish PC 2007 | 51 | 25 | 17 (68%) | 0 | 1 | 3 | 0 | 20(80%) |
| Vehicle Sniffs Exterior to Establish PC 2008 | 31 | 25 | 11(44%) Actual Find Probability dropped 35 29% from 2007 to 2008 | 4 | 1 | 1 | 2 | 19(76%) |

3. Training records reflect that Todd has never failed to respond to a concealed drug.

4. Training records are inaccurately maintained.

5. Mr. Rispoli failed to provide any empirical data from the records to support his opinion that the dog is reliable.

6. Training records reflect this team averages 9.46 hours per month. Industry recommended standards urge 4 hours per week and a minimum of 16 hours per month.





**(Above Chart reflects 0 as meeting industry standard training time requirements)**

7. A training record review does not support the statement of Mr. Rispoli that this team's training is consistent as it relates to time.

8. Mr. Rispoli has a financial interest in this team.

I hereby swear and affirm under penalty of perjury that the above statements are true and accurate to the best of my knowledge.

DATED this 7th day of April, 2009.

Signed,

*/s/ Steven D. Nicely*
Steven D. Nicely
K9 Consultants of America
401 Little Texas Lane #1720
Austin, TX
78745
(512) 912-9743

4

# EXHIBIT "B"



EXHIBIT "C"



EXHIBIT "D"











EXHIBIT "E"



# EXHIBIT "F"



EXHIBIT "G"

# STATE OF WYOMING    Member NRVC

FORM P-8 (5/03)

CITATION/COMPLAINT    Court / Judge _____

DKT # _____ Event # P _____

State of Wyoming, County / City / Town of _____

VS
Defendant _____
(Last)                    (First)                    (MI)

Street Address _____

Mail Address _____

City _____ St _____ Zip _____

DOB ____ / ____ / ____ Sex ____ Race ____ Ht ____ Wt ____ Hair ____ Eyes ____

DL # _____ Class _____ State ____ Comm. Viol. ☐

SSN ____ / ____ / ____ G&T Lic # _____

VL # _____ St ____ Make _____ Model _____ Year ____

COMM  ☐   AUTO ☐   FU ☐   Motorcycle ☐   Util ☐   Color _____
TRK

DOT # _____ MC # _____ Haz Mat  ID # _____

Co Name _____

Address _____

The undersigned states that on or about the _____ day of _____ 20 ____

at ____ ____ hrs at Section # ☐ ☐ - ☐ ☐ | MP ☐ ☐ • ☐

Street ☐   County Rd ☐   State Hwy ☐   Private Property ☐   Travel direction ____

Location _____

The defendant did unlawfully commit the following offense against the peace and dignity of the State of Wyoming

County / City / Town of _____

_____

_____

in violation of W S ☐ or Ord ☐ No. ____ ____ _____ VIC _____

and the undersigned further states that there are just and reasonable grounds to believe that the person named above committed the offense herein.
CRASH ☐

Complainant _____ BAC. _____ %

Sworn to and Subscribed before me this _____ day of _____ 20 ____

Judge/Notary _____

I hereby promise to appear in Municipal / County / Circuit Court at _____ AM ☐ PM ☐

on the ____ day of _____ 20 ____ in _____ , WY.

☐ MUST APPEAR                    ☐ May forfeit bond in lieu of appearance

SignatureX _____

Officer _____ No. _____ Dept. _____

                                                    NO Bond Taken ☐

Bond  $ _____ Paid by _____

Data _____ Rec'd by _____

Date _____ Rec'd by _____

# EXHIBIT "H"



EXHIBIT "I"

DLI #2008-0302

DJJA # MV-08-0017



# Wyoming Highway Patrol
**Incident/Arrest Report Form**

☐ Supplemental Report
P-56 (R10/07)

Supervisor's Initials

| | |
|---|---|
| Event Date: 08/26/2008 | Time: 1330 | Event Number: P2008 146796 |

Primary Officer's Name: **CHATFIELD, DAVID J.**    Badge #.: 104    Division: P

Event Type: CON SUB - FELONY - WHP K9    County: **CARBON**

Location Description: MP 256 I-80E    Route: CB-01    Milepost: 256    Direction: E

☐ Stolen Vehicle  ☐ Baton Used  ☐ Mace Used    ☐ Firearm Drawn  ☐ Firearm Fired  ☐ Road Spikes Used

☐ Pursuit/Eluding    ☐ Handcuff Injury    NCIC#:    Origin.

☐ Additional Subjects    ☐ Additional Officers    Imagery Method: **DIGITAL PHOTO**

Assisting Officer:    Other Agency Case #
**B. SCHULMEISTER**

Subject 1:
**LUDWIG , SERGEI P**

Address:    City:    State:    ZIP:
**405 WESTMINSTER AVE #5**    **ELIZABETH, NJ 07208**

| ID Number: | ID Type: | DOB: | Gender: | Race: |
|---|---|---|---|---|
| L90977007701764 | DL - NJ | 01/25/1976 | M | W |

| Height: | Weight: | Hair: | Eyes: | | |
|---|---|---|---|---|---|
| 6'03 | 270 | **BRO** | **BRO** | ☐ Injured | ☒ Arrested |

Subject 2:

Address:    City:    State:    ZIP:

ID Number:    ID Type:    DOB:    Gender:    Race.

| Height: | Weight: | Hair: | Eyes: | | |
|---|---|---|---|---|---|
| | | | | ☐ Injured | ☐ Arrested |

| Vehicle Make: | Model: | Year: | Color: | VIN: | License #: | State: |
|---|---|---|---|---|---|---|
| **NISSAN** | **ALTIMA** | **2005** | **GRY** | 1N4AL11D95C39753 | **SYX 18W** | **NJ** |

Registered Owner:
**ROBERT V. DISIENA**

Address:    City:    State:    ZIP:
**55 WARD ST.**    **CLIFTON, NJ 07011**

☒ Towed    ☐ Inventoried    Tow Company: **ELK MOUNTAIN TOWING**

Officer Signature:    Date: 8-19-08

P-56B

(2/99)

## WYOMING HIGHWAY PATROL

| | | Page 2 of 4 |
|---|---|---|
| Original Report By Officer: D. Chatfield | Date: 8/29/08 | Case #: P2008146796 |
| ☐ Supplemental Report By: | Date of Incident: 08/26/08 | |

Narrative

On August 26, 2008, at approximately 1330 hours, I was parked in the median of Interstate 80 near milepost 254 facing eastbound traffic. I observed a gray passenger car traveling east at an estimated speed of 85 MPH. I released my radar and received a reading of 85 MPH. The posted speed limit on this stretch of Interstate is 75 MPH. When the vehicle drove by me I observed the following: The vehicle was a gray Nissan with New Jersey license plates. There was one male occupant. There was a shirt hanging in the left rear window.

I pulled out of the median and began to pursue the Nissan. I turned on my overhead lights very shortly after entering the eastbound lanes of Interstate 80. There was no traffic between the Nissan and my patrol vehicle. The driver of the Nissan did not appear to slow down and did not yield to the emergency lane until I was right behind him. The driver then moved over to the emergency lane, but took a lot longer than most vehicles to bring the vehicle to a stop. The vehicle stopped at approximately 1333 hours. As the vehicle stopped I noticed the following: The license plate was SYX18W/NJ. There was a radar detector mounted on the windshield.

I approached the driver's side window and advised the driver of the violation. I asked to see his license, registration and insurance. At this time I noticed a strong odor of cologne or air freshener. As the driver retrieved his documents I noticed his hands were visibly trembling. He had a lot of difficulty removing his wallet from his pocket. I asked the driver if he was headed to New Jersey. He said he was. I asked him where he was coming from. The driver swallowed hard, paused, and then said(very quietly) California. The driver would not make eye contact. I asked if he was traveling for work or vacation. The driver stated work and added he did not like to fly. I asked what city he was coming from and he stated San Jose. The driver handed me his license with a card from the Fraternal Order of Police behind it. He also handed me the registration and insurance. His hands were still visibly shaking. I had the driver, Sergei Ludwig, come back to by vehicle with me. While at the vehicle I also noticed the following: There was only one shirt hanging in the rear window. The vehicle had very little in it other than snacks and a cooler on the back seat.

In my vehicle, I explained to Ludwig that I was going to issue him a citation for the speeding violation. I then asked him if I could ask him some questions while I filled out the citation. Ludwig said, " Sure." I verified the address on his driver's license was current. I then asked him about the ownership of the car. Ludwig stated the vehicle was technically his best friends. He stated he had bad credit so his friend co-signed on the car. Both the registration and insurance were issued to Robert V. Disiena only. I then had a conversation with Ludwig about his travels. Ludwig stated he was coming from San Jose where he had worked on some server problem as an IT person. He said he was working for a company called Calpop(?). He said Calpop was stationed in New Jersey but had servers in California. He then stated he did not work for Calpop, but worked for Elligy(?) He said he sometimes did consultant work for Calpop. Ludwig stated he had been in California for about 4 days and left Monday afternoon. He said he slept in his car Monday night at about 0230 hours before continuing east. I did not smell the odor of cologne or air freshener coming from Ludwig. Throughout my conversation with Ludwig in my car I observed signs of both nervousness and deception: Ludwig's hands continued to shake. He would not make eye contact. When describing his trip, job, and the vehicle ownership his statements were

Officer Signature: _DCC/_

P-56B

(2/99)

## WYOMING HIGHWAY PATROL

| | | | Page 3 of 4 |
|---|---|---|---|
| **Original Report By Officer:** D. Chatfield | | **Date:** 8/29/08 | **Case #:** P2008146796 |
| ☐ **Supplemental Report By:** | | **Date of Incident:** 08/26/2008 | |

*Narrative*

fragmented. He would swallow hard before speaking and often cleared his throat.

I returned all of Ludwig's documents and issued him the citation for speeding. When Ludwig signed the citation it appeared as if he was putting extra pressure down on his hand to avoid shaking while signing his name. I explained the citation and then asked him if he had any questions. He did not. I then told Ludwig he was free to go and to have a safe trip. Ludwig exited my car and began walking back to his car.

At approximately 1343 hours, I met with Ludwig between the cars and asked him if I may ask him some more questions. Ludwig stated he wanted to get on his way, but would if he had to. I told Ludwig I believed he was trafficking marijuana. I then told him to stand to the side as I was going to have my K9 sniff the exterior of the Nissan. I had to tell him to stand aside a couple of times before he complied. I then released my K9. The wind was blowing strongly from southwest to northeast. The K9 walked up the left side of the car and then moved back and began to sniff intently at the air downwind from Ludwig. I re-directed the K9 back to the Nissan. The K9 sniffed near the door seams on the left side and sat. This was a clear alert to the presence of the odor of one of four controlled substances. I advised Ludwig of the alert and then retrieved the keys from him. When the trunk popped open the K9 alerted to the air coming from the trunk. I had the K9 sniff the interior of the trunk. The K9 did not alert in the interior of the trunk. I then had the K9 sniff the interior of the Nissan. The K9 sniffed hard at the seams on the rear seat cushions, but did not alert inside the car. I placed the K9 back inside the trunk and he again did not alert. I placed the K9 back into the patrol car.

I then began a hand search of the Nissan. I searched the trunk and the belongings in the trunk. In one of the bags I found a stack of twenty dollar bills. At the back of the trunk, I noticed the carpet was glued down and I could not see the separation of the two rear seat parts. I moved to the rear seat area in the passenger compartment. I began to remove the bottom cushion of the rear seat from the driver's side. I noticed the fuel sending unit cover was not properly attached and there were scratches under the cover. I also noticed the bolt on this side had signs of being removed recently. I moved to the other side of the car and completely removed the rear seat bottom cushion. The bolt on this side also had recent tool marks. The center bolt was missing completely. I retrieved my tools and removed the two bolts. Trooper Schulmeister arrived around this time. This cushion did not pull off as it should have with these bolts removed. Behind the cushion I could see there was a large piece of metal, covered in glued down carpet, blocking the normal access to the trunk. From the driver's side I pulled away the carpet and could see where the metal had been welded in place. I then noticed the cushion was bolted to something at the top. I was now completely certain I had an after market compartment. I then handcuffed Ludwig and he was placed in Trooper Schulmeister's car.

I called for a tow truck and for a state mechanic to meet me at the State shop in Elk Mountain. Elk Mountain towing arrived several minutes later. Lieutenant Adams, who now had Ludwig in his car, left the scene en route to the State shop. I followed the tow truck, with the Nissan, to Elk Mountain.. Arrangements were made with Special Agents Propps and Wardell from the state Division of Criminal Investigation to meet us there as well. I arrived at the shop and was met by the mechanic, Lt Adams and the DCI agents.

<u>Officer Signature:</u>

|  |  |  | Page 4 of 4 |
|---|---|---|---|
| Original Report By Officer: D. Chatfield | Date: | 8/29/08 | Case #: P2008146796 |
| ☐ Supplemental Report By: | Date of Incident: | 08/26/08 |  |

*Narrative*

The mechanic was able to remove the rear seat cushion and expose the access to the after market compartment. The compartment contained 11 packages of a white powder substance. The white powder tested presumptively positive for Heroin. The packages of suspected heroin and suspect were turned over to the DCI agents.

I escorted Special Agent Propps, who was transporting the 11 packages and suspect to Cheyenne, from Elk Mountain to Buford before the escort was picked up by Trooper Hess. This ended my participation in the case.

I took digital photographs of the vehicle at the side of the Interstate and at the State shop.

Special Agent Propps called me on August 27, 2008 and informed the total weight of the 11 packages was 11.3 pounds.

Officer Signature:

# EXHIBIT "J"

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

| 1. Program Code | 2. Cross File | Related Files | 3. File No. MV-08-0017 | 4. G-DEP Identifier WCH1I |
|---|---|---|---|---|
| 5. By: TFO Len Propps At: Cheyenne RO | ☐ ☐ ☐ ☐ | | 6. File Title LUDWIG, Sergei | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ | | 8. Date Prepared 08/31/08 | |

9. Other Officers: WHP Trooper Chatfield, DCI SA Jeremy Wardell, DEA SA Germano

10. Report Re: Summary report, Interdiction at milepost 257 I-80 Carbon County, Wyoming

---

**DEFENDANT**

LUDWIG, Sergei Paul
DOB: 01/25/1976
220 West Jersey Street Apartment 3N
Elizabeth, NJ

**VIOLATIONS**

21 USC 841 (a)(1) and (b)(1)(A)(i)

**JUDICIAL DISTRICT**

District of Wyoming

**DATE,TIME, PLACE**

08/26/2008 at approximately 1330
Interstate 80, MP 256, E-B
Carbon County, Wyoming

**EXHIBITS**

Exhibit 1, approximately 5,071 grams of heroin
N-1, Three (3) DVD's from Trooper Chatfield's
patrol car.

**ACTION ON DEFENDANT**

LUDWIG was placed on a DEA hold and transported
to the Laramie County Detention Center in
Cheyenne, Wyoming pending Federal charges.

**WITNESSES**

WHP Trooper Chatfield, DCI SA Wardell

---

| 11. Distribution: Division | 12. Signature (Agent) TFO Len Propps | 13. Date 08/31/08 |
|---|---|---|
| District | 14. Approved (Name and Title) Jay Erickson RAC | 15. Date 08/31/08 |
| Other | | |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| **REPORT OF INVESTIGATION** | 1. File No. MV-08-0017 | 2. G-DEP Identifier WCH1I |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |

| 4. Page 2 of 5 | |
|---|---|
| 5. Program Code | 6 Date Prepared 08/31/08 |

## DETAILS

1. On August 26, 2008 Wyoming Highway Patrolman (WHP) Dave Chatfield conducted a traffic stop on a vehicle at milepost 257 in Carbon County, Wyoming. Trooper Chatfield stopped the vehicle for traveling 85 in a 75. The registration on the vehicle was SYX18W, from New Jersey.

2. Trooper Chatfield pulled from the median and activated his emergency lights. The driver of the vehicle did not appear to slow down or yield to the emergency lights. The driver eventually moved to the emergency lane, but took longer than most drivers to stop. After the vehicle stopped Chatfield noticed a radar detector mounted on the windshield.

3. Chatfield approached the drivers side window and asked for the drivers license, registration and insurance. Chatfield noticed the strong odor of men cologne or air freshener. As the drivers retrieved the documents Chatfield noticed his hands were visibly trembling. The driver had difficulty removing his wallet from his pocket.

4. Chatfield asked the driver if he was headed to New Jersey, the driver said he was. Chatfield asked where the driver was coming from. The driver swallowed hard, paused and said very quietly "California". Chatfield asked the driver if he was traveling for business or vacation. The driver said he was traveling for work and did not like to fly. The driver said he was traveling from San Jose.

5. The driver handed Chatfield a drivers license with a Fraternal Order of Police business card behind it. The drivers hands were still visibly shaking. Chatfield identified the driver as Sergei LUDWIG from the New Jersey drivers license. Chatfield noticed one shirt hanging in the rear window and very little else in the car other than snacks. The driver accompanied Chatfield to his patrol car.

6. Chatfield said LUDWIG told him the vehicle belonged to his best friends. LUDWIG said he had bad credit so his friend co-signed on the loan with him. The registration and insurance was issued to Robert V. DISIENA only.

7. LUDWIG told Chatfield he was in San Jose working on a server problem as an IT person. LUDWIG said he was working for a company called

| DEA Form - 6a (Jul 1996) | **DEA SENSITIVE** Drug Enforcement Administration |
|---|---|

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | 1 File No<br>MV-08-0017 | 2 G-DEP Identifier<br>WCH11 |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |
| 4.<br>Page 3 of 5 | | |
| 5. Program Code | 6 Date Prepared<br>09/31/08 | |

CalpPOP (SP). LUDWIG said CalPOP was stationed in New Jersey but had servers in California. LUDWIG then said he did not work for CalPOP but worked for Elegy. LUDWIG said he did consulting work for CalPOP. LUDWIG told Chatfield he had been in California for four days and left on Monday night at about 0230. Chatfield said he did not smell the odor of cologne or air freshener coming from LUDWIG while seated in his patrol car.

8. Chatfield said throughout his encounter with LUDWIG he observed signs of deception and nervousness. LUDWIG's hands continued to shake, and he would not make eye contact. Chatfield said when LUDWIG described his trip, job and the vehicle ownership his statements were fragmented. He would swallow hard before speaking and often cleared his throat. Chatfield returned all of LUDWIG's documents and issued him a citation for speeding. Chatfield said when LUDWIG was signing the citation it appeared to him LUDWIG put extra pressure down on his hand to avoid shaking while signing his name. Chatfield told LUDWIG he was free to leave and to have a safe trip. LUDWIG exited the patrol car and began walking towards his vehicle.

9. At approximately 1343 hours Chatfield met with LUDWIG between the two cars. Chatfield asked LUDWIG if Chatfield could ask him a few more questions. LUDWIG told Chatfield he would like to get on his way but would if he had to. Chatfield said he told LUDWIG he believed LUDWIG to be trafficking marijuana. Chatfield had LUDWIG stand aside to have his K-9 sniff the vehicle. Chatfield said he had to tell LUDWIG a few times to stand aside before he complied. The K-9 sniffed the left side rear door and sat. A clear alert to the presence of the odor of one of four controlled substances. Chatfield said he popped the trunk and the K-9 alerted to the trunk area.

10. Chatfield said he searched the trunk of the Nissan and located a stack of 20 dollar bills. Chatfield noticed the carpet was glued down and Chatfield could not see the separation of the two back seats. Chatfield went to the rear seat area and removed the bottom cushion. Chatfield noticed the fuel sending unit was not properly attached and there were scratches under the cover. A bolt at the side also had signs of being removed. Chatfield also noticed other tool marks around the seat and bolts missing.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

| **REPORT OF INVESTIGATION** | 1. File No.<br>MV-08-0017 | 2. G-DEP Identifier<br>WCH11 |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |
| 4.<br>Page 4 of 5 | | |
| 5. Program Code | 6. Date Prepared<br>08/31/08 | |

11. Trooper Chatfield located what he believed to be a after market compartment. LUDWIG was handcuffed and placed into Trooper Schulmeister's car.

12. Elk Mountain Towing was contacted and towed the vehicle to the Elk Mountain State Shops to be further inspected. Once at the WYDOT shop TFO Propps and Chatfield, along with a shop mechanic removed the rear cushion to gain access to the compartment.

13. Agents and Chatfield removed eleven (11) packages of white powder. Trooper Chatfield field tested a portion of one of the plastic bags. The test resulted in a presumptive positive result for Heroin.

14. LUDWIG and the evidence were transported to Cheyenne by TFO Propps. LUDWIG was booked into the Laramie County Detention Center and placed on a DEA hold.

## CUSTODY OF EVIDENCE

1. Exhibit 1, approximately 11.3 lbs of suspected Heroin, was turned over to TFO Propps while at the WYDOT shop in Elk Mountain. TFO Propps hand delivered Exhibit to the DEA Resident Office in Cheyenne and dropped the evidence in the temporary evidence drop. SA Wardell of DCI witnessed the drop. On Wednesday August 27, 2008 SA Curry and SA Walsh removed Exhibit 1 and sent it Fed Ex to WRL, Tracking number 8625 4486 3683 and 8625 4486 3694.

2. Exhibit N-1, misc. paperwork from the Nissan. Exhibit N-1 was retained by TFO Propps.

## INDEXING

LUDWIG, SERGEI PAUL - NADDIS negative; White male, DOB: 01/25/1976, SSN 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, State ID NJ949734B, NY7542019R, 6'3, 225 lbs, New Jersey Drivers license number L9097 70077 01764, ADDRESS: 220 West Jersey Street Apartment 3N, Elizabeth, NJ.

DISIENA, ROBERT - NADDIS negative; white male, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ 55 Ward Street Clifton, NJ 07011. Unknown DL number and physical descriptors.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used

| **REPORT OF INVESTIGATION** | 1. File No<br>MV-08-0017 | 2. G-DEP Identifier<br>WCII1I |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |
| 4.<br>Page  5  of  5 | | |
| 5 Program Code | 6 Date Prepared<br>08/31/08 | |



This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used

# EXHIBIT "K"

**U.S. Department of Justice**
Drug Enforcement Administration

# REPORT OF INVESTIGATION

| 1. Program Code | 2. Cross File | Related Files | 3. File No. MV-08-0017 | 4. G-DEP Identifier WCH1I |
|---|---|---|---|---|
| 5. By: S/A Chris Reddington At New Jersey Division | ☐ ☐ ☐ | | 6. File Title LUDWIG, Sergei | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By | ☐ | | 8. Date Prepared 09/02/2008 | |

9. Other Officers: SAs Young, Gunther, Caporale and Sermano

10. Report Re: Interview of DISIENA, Robert on August 27, 2008 reference his knowledge of LUDWIG, Sergei.

## SYNOPSIS

On August 26, 2008 at approximately 9:00 PM S/A Reddington received a phone call as acting duty agent indicating a LUDWIG, Sergei of Elizabeth NJ had had been arrested by Wyoming State Patrol for possession of (11) lbs of heroin secreted inside hidden compartments of a Nissan Altima registered to a Robert DISIENA out of Clifton, NJ. Agents subsequently interviewed DISIENA at his residence to obtain further investigatory leads.

## DETAILS

1. On August 26, 2008 at approximately 9:00 PM, S/A Reddington received a phone call as acting duty agent from a subject identifying himself as Leonard Props, an Officer from the Wyoming Division of Criminal Justice/DEA Task Force. Mr. Props advised S/A Reddington that a Wyoming State Trooper effectuated a motor vehicle stop on a Grey 2005 Nissan Altima bearing NJ registration **SYX 18W**. A subsequent NJ DMV inquiry revealed the vehicle is registered to **Robert DISIENA; 55 Ward Street, Clifton, NJ.** The driver and sole occupant of the vehicle was **Sergei LUDWIG**, 220 West Jersey Avenue, Apt 3N, Elizabeth, NJ. A subsequent K-9 search of the motor vehicle yielded eleven (11) pounds of suspected heroin which was secreted inside false compartments within the vehicle. LUDWIG was subsequently arrested and processed by the Wyoming State Police and the vehicle was seized as evidence.

| 11. Distribution: | 12. Signature (Agent) | 13. Date |
|---|---|---|
| Division | S/A Chris Reddington | 09/02/2008 |
| District | 14. Approved (Name and Title) | 15. Date |
| Other SARI | Kenneth Ludowig Group Supervisor | |

**DEA Form - 6**
(Jul. 1996)
CR

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Admin stration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used

TFO Propps

**U.S. Department of Justice**
Drug Enforcement Administration

| **REPORT OF INVESTIGATION** | 1. File No. MV-08-0017 | 2 G-DEP Identifier WCHII |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |

4
Page 2 of 4

| 5. Program Code | 6. Date Prepared 09/02/2008 |
|---|---|

by the Wyoming State Police and the vehicle was seized as evidence. Mr. Props also relayed that LUDWIG was questioned but denied any knowledge of the heroin and stated he was a free-lance IT Computer Specialist and had simply drove out to California from New Jersey to do a computer job. **\*Note LUDWIG did advise that he was on his way back to New Jersey from California.**

2. On August 27, 2008, SAs Reddington, Gunther, Young, Germano and Caporale were able to positively confirm that LUDWIG's most current address was at the Chilton Towers Apartment Complex, 220 West Jersey Avenue Apt 3N, Elizabeth, NJ. After confirming that no one appeared to be inside the apartment, all of the above mentioned agents proceeded to 55 Ward Street in order to speak with the registered owner (**DISIENA, Robert)** of the seized vehicle.

3. At approximately 1:00 PM, SAs Reddington, Young, Gunther, Germano and Caporale identified Robert DISIENA, the registered owner of the vehicle walking into his residence at 55 Ward Street, Clifton, NJ. DISIENA agreed to speak with Agents and gave the following information: DISIENA acknowledged that he had purchased the vehicle for LUDWIG because both subjects were close friends and LUDWIG had bad credit and could not afford the vehicle on his own. DISIENA Stated that LUDWIG would make periodic payments to DISIENA for utilizing that vehicle. DISIENA stated he had been friends with LUDWIG for a couple of years and knew LUDWIG to be a very mild mannered and law abiding individual who would never get mixed up with large amounts of drugs. DISIENA stated he did not know how LUDWIG obtained the suspected heroin or how the false compartment wound up in the vehicle. DISIENA further stated that he knew LUDWIG to be a free-lance IT computer specialist and knew that LUDWIG had a girlfriend named Samantha who lived somewhere in up-state New York. DISIENA stated he also knew that LUDWIG resided in an apartment in Chilton Towers. However, DISIENA stated that he did not know LUDWIG's girlfriend's phone number nor know exactly what apartment LUDWIG resided in.

4. Shortly thereafter, SAs Reddington, Caporale, Germano, Young and Gunther spoke with another subject who was also located at that

This report is the property of the Drug Enforcement Administration
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used.

| **REPORT OF INVESTIGATION** | 1. File No.<br>MV-08-0017 | 2. G-DEP Identifier<br>WCH1T |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |
| 4.<br>Page  3  of  4 | | |
| 5. Program Code | 6. Date Prepared<br>09/02/2008 | |

stated that he had been a roommate of DISIENA's for some time at 55 Ward Street, Clifton, NJ and also was friends with LUDWIG. KAHAN stated that he knew LUDWIG for approximately ten years and that LUDWIG was a fan of heavy metal death music and had met LUDWIG through social circles involving this particular style of music. KAHAN stated he knew LUDWIG to be well mannered and quiet. KAHAN stated he was very surprised to learn that LUDWIG had been arrested with such a large quantity of illegal narcotics. KAHAN also stated that he knew LUDWIG was a freelance IT Computer Specialist who would often make long trips for work. KAHAN was not able to provide any further information on LUDWIG.

5. On August 27, 2008, at approximately 5:30 PM SAs Reddington, Germano and Caporale returned to Chilton Towers located at 220 West Jersey Avenue, Elizabeth, NJ in an attempt to speak with a building supervisor in order to gain further information regarding LUDWIG.

6. SAs Reddington, Germano and Caporale met with a subject who identified herself as Judy Schaefer who was the Chilton Towers Leasing Consultant. Ms. Schaefer stated that she recognized the photograph of LUDWIG and was upset to hear what had occurred. Ms. Schaefer further stated that a female who identified herself as LUDWIGS's girlfriend had just paid approximately $1600 in cash for the following month's rent. Ms. Schaefer stated the female's name was Samantha BLISS. Ms. Schaefer stated this was the first time BLISS had paid the rent on LUDWIG's behalf and had always just received a check from LUDWIG for the rent. Ms. Schaefer further stated that BLISS had been taking items out of LUDWIG's apartment. BLISS was not able to be located by Agent's at that time. Ms. Schaefer did advise that BLISS had mentioned she would be coming back the next day in order to pick up the remaining items in the apartment. Ms. Schaefer was left a contact number for SA Germano to call should any new developments occur.

## INDEXING

1. LUDWIG, Sergei - NADDIS Negative; white male; 6'3"; 180lb; black hair; blue eyes; DOB: 01/25/1976; SSN: 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; residence

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used

| **REPORT OF INVESTIGATION** | 1. File No<br>MV-08-0017 | 2. G-DEP Identifier<br>WCH11 |
|---|---|---|
| *(Continuation)* | 3. File Title LUDWIG, Sergei | |
| 4.<br>Page 4 of 4 | | |
| 5. Program Code | 6. Date Prepared<br>09/02/2008 | |

address: 220 West Jersey Avenue Apt. 3N Elizabeth NJ; New Jersey
Driver's License Number L90977007701764.
Remarks: Arrested on 08/28/2008 by Wyoming State Patrol for
possession of approximately 11 (eleven) pounds of suspected Heroin
which was secreted inside hidden compartments in the vehicle he was
operating (2005 Grey Nissan Altima NJ:SYX18W.

2. NJ Registration SYW 18W – NADDIS Negative; 2005 Grey Nissan Altima;
Remarks: Vehicle operating by LUDWIG, Sergei at the time LUDWIG was
Stopped by Wyoming State Patrol. Vehicle contained several hidden
compartments which contained a total of eleven pounds of suspected
heroin.

3. Bliss, Samantha: NADDIS Negative;
Remarks: Alleged girlfriend of LUDWIG, Sergei who was believed to
reside in New York State.

4. DISIENA, Robert: NADDIS Negative;
Remarks: Friend of LUDWIG, Sergei and registered owner of the 2005
Nissan Altima NJ: SYW 18W that was seized after Wyoming State Patrol
located 11 (eleven) pounds of suspected Heroin secreted in hidden
compartments within the vehicle.

5. KAHAN, Daryl: NADDIS; Negative;
Remarks: Friend of LUDWIG, Sergei.

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration
Neither it nor its contents may be disseminated outside the agency to which loaned

Previous edition dated 8/94 may be used